## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52464-3-II |
| Respondent, | |
| v. | |
| KEVIN RAY CASE, | PUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—A jury found Kevin Ray Case guilty of fourth degree assault and harassment with domestic violence findings on both counts for an incident involving his girlfriend, Cindy Rothwell. Rothwell made a written, sworn statement to police shortly after the incident alleging that Case had hit, strangled, and threatened to kill her.

At trial, Rothwell recanted her allegations on the witness stand. Defense counsel asked Rothwell if she felt pressured or threatened regarding her testimony, the State objected, and the trial court sustained the objection. But the trial court allowed her to testify that she was not afraid of Case and fear was not influencing her testimony at trial. The State then called a mental health counselor, Jason Cain, as an expert witness, who testified that as a general matter it is somewhat common for survivors of domestic violence to later recant or minimize their allegations.

Case appeals, arguing that the trial court's limitation on his cross-examination of Rothwell violated his right of confrontation and right to present a defense under the Sixth Amendment to the United States Constitution. He also argues that Cain's testimony constituted an improper

comment on Rothwell's credibility, violating Case's right to a jury trial. He further argues that he received ineffective assistance of counsel for counsel's failure to object to Cain's testimony.

We hold that although the trial court abused its discretion in limiting Case's cross-examination of Rothwell, this did not rise to the level of a violation of Case's Sixth Amendment rights and the error was harmless. We also hold that Cain's testimony was not improper and, therefore, defense counsel was not ineffective for failing to object.

We affirm.

FACTS

One morning, Rothwell's daughter, Natasha, received a text message from Rothwell asking her to call 911 and send police to Rothwell's house. Natasha called 911 and then went to check on her mother.

Aberdeen Police Officer Jon Hudson was the first officer on the scene after Natasha's call. Hudson heard a male voice yelling, and through a window he could see Case standing over Rothwell yelling at her. Hudson could not make out what Case was saying, but he understood that "there was a situation that needed to be interrupted" because Rothwell was "cowering" and "curled up" in a fetal position. Verbatim Report of Proceedings (VRP) (July 17, 2018) at 42-44. Hudson announced himself. Case briefly disappeared into another room. He returned and opened the door, removing a folded pocket knife from his pocket and placing it on a dresser.

While Hudson spoke with Case, Aberdeen Police Officer Ron Bradbury arrived and went inside to speak to Rothwell. Bradbury described Rothwell as "relieved" as she talked with him. VRP (July 17, 2018) at 33. Following this conversation, the police arrested Case.

Hudson remained at the house to investigate the scene and take Rothwell's statement. Hudson noticed possible injuries on Rothwell's arm, neck, head, and foot, which another officer photographed. Rothwell was upset and crying during the interview, but she was cooperative and forthcoming about what happened. Rothwell reported that Case had gotten angry when she did not call him "daddy." VRP (July 18, 2018) at 205-06. He entered her bedroom by ripping down the curtain that served as a doorway. Rothwell reported that Case attacked her, at various points hitting her with her cane, strangling her, and throwing her to the floor. She told Hudson that Case threatened to kill her, he threatened her with a pocket knife, and she believed her life was in danger.

Rothwell signed a written statement under oath reflecting what she told Hudson. Based in part on this statement, the State charged Case with domestic violence second degree assault, domestic violence felony harassment, and domestic violence third degree malicious mischief.

At trial, the testimony of the responding officers and Natasha was consistent with the facts as described above. The pictures of Rothwell's injuries were admitted as exhibits.

Rothwell testified that she could not remember the incident. She said that she did not remember texting Natasha for help and she did not remember her conversations with the police. She said that reading the statement she gave to police would not help her remember. When the State presented her with a copy of her statement, she said that she was having trouble reading it. The trial court then gave the State permission to treat Rothwell as a hostile witness.

The State asked Rothwell if she remembered Case getting angry when she refused to call him "daddy," ripping down the bedroom curtain, strangling her, threatening to kill her while holding an open pocket knife, pushing her down, smashing her jar of marbles, and hitting her with her walking cane. VRP (July 17, 2018) at 108-11. Rothwell either denied that these things occurred

3

or said she did not remember them happening. She also testified that she did not remember giving

a written statement to Hudson, although she acknowledged that the statement bore her signature.

During cross-examination, over the State's objection, Rothwell stated that she had

reservations about testifying. The following exchange occurred:

> [Defense counsel]: Do you have any fear about testifying today?
> > [State]: Objection. Relevance.
> > [Defense Counsel]: Your Honor, that's an element of harassment.
> > The Court: Overruled.
>
> . . . .
> [Defense Counsel]: . . . Do you have fear for anything about testifying today and
> how you testify?
> [Rothwell]: No
> [Defense counsel]: Have you been threatened in any way to testify today?
> > [State]: Objection. Relevance.
> > The Court: I'll sustain the objection.
> > [Defense counsel]: Okay.
>
> [Defense counsel]: How hard was it for you to come here today and tell your truth?
> > [State]: Objection. Relevance and vouching.
> > The Court: I'll sustain the objection.
>
> [Defense counsel]: Ms. Rothwell, do you fear Mr. Case in any way?
> [Rothwell]: No.
> [Defense counsel]: Do you – did you feel pressured testifying in any way?
> > [State]: Objection. Relevance.
> > The Court: I'll sustain the objection.
>
> [Defense counsel]: Were you afraid of being charged with perjury?
> > [State]: Objection.
> > The Court: I'll sustain the objection.

VRP (July 17, 2018) at 158-59.

After Rothwell's testimony, Hudson summarized Rothwell's sworn statement from the day

of the incident for the jury, including that Case attacked her, hit her with a cane, and strangled her.

Cain, a mental health counselor, then testified generally that victims of domestic violence

often respond in unpredictable ways. Cain explained that it is "somewhat common" for survivors

of domestic violence to recant their allegations of abuse and "very common" for them to minimize

4

the abuse. VRP (July 18, 2018) at 218-19. They can even forget episodes of abuse altogether as a result of trauma. Cain explained that survivors generally might display these responses as a result of love for, dependency on, or fear of the perpetrator, but there are many other possible reasons to explain counterintuitive victim behavior.

Cain emphasized that he was speaking in general terms. He had not spoken with any of the parties in this case, he would not provide any opinions about any person involved in this case, and he had intentionally kept himself ignorant of the facts of this case. Case did not object during this portion of Cain's testimony.

During closing argument, without objection, the State read the statement Rothwell gave to police that had been admitted as an exhibit. The State relied on Cain's testimony to argue to the jury, over Case's objection, that it should believe the statement Rothwell gave to the police rather than her testimony at trial.

During deliberations, the jury sent a note to the court asking for Case's criminal history and whether police had ever responded to any prior incidents involving Case and Rothwell. The court responded simply that the jury had been provided with all the evidence that had been admitted.

The jury found Case not guilty of third degree malicious mischief and second degree assault, and found him guilty of the lesser included charge of fourth degree assault, as well as harassment. The jury also made a special finding that Case and Rothwell were family or household members during the commission of his crimes.

Case appeals his convictions, arguing that the trial court's limitation on his cross-examination of Rothwell violated his right of confrontation, that Cain's testimony constituted an

improper comment on Rothwell's credibility in violation of Case's right to a jury trial, and that defense counsel's lack of objection to this testimony constituted ineffective assistance of counsel.

ANALYSIS

I. LIMITATION ON CROSS-EXAMINATION

Case argues that the trial court violated his rights to confrontation and to present a defense by limiting his cross-examination of Rothwell. We hold that the trial court abused its discretion in limiting the cross-examination, but this did not rise to the level of a violation of Case's Sixth Amendment rights. In addition, the evidentiary error was harmless.

A.      Right of Confrontation and Right to Present a Defense

Criminal defendants have a constitutional right to confront and cross-examine adverse witnesses and to present their defense. U.S. CONST., amends. V, VI, XIV; WASH. CONST. art. I, §§ 3, 22. In *State v. Arndt*, the Washington Supreme Court reiterated the two-part analysis for determining whether the exclusion of evidence violates a defendant's constitutional right to present a defense. 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019). Appellate courts review the trial court's individual evidentiary rulings for abuse of discretion and consider de novo the constitutional question of whether those rulings deprived the defendant of their right to present a defense and cross-examine adverse witnesses. *Id.*; *see also State v. Darden*, 145 Wn.2d 612, 619-22, 41 P.3d 1189 (2002) (applying a similar test in the context of the right to confrontation).

B.       The Trial Court Abused Its Discretion

Case claims that the trial court erred in limiting his cross-examination of Rothwell because it prevented him from introducing important evidence regarding her credibility. Specifically, he points to one line of questioning from defense counsel on whether Rothwell felt threatened or otherwise pressured in testifying. The trial court permitted testimony indicating that Rothwell was not afraid of Case, nor was she afraid to testify. But the trial court sustained objections to questions about whether Rothwell had been threatened, whether she found it difficult to appear and testify, and whether she was concerned about being charged with perjury.

Case argues that this line of questioning was relevant because it went to Rothwell's credibility, and "'any fact that goes to the trustworthiness of a witness may be elicited if it is germane to the issue.'" Br. of Appellant at 7 (quoting *State v. Lile*, 188 Wn.2d 766, 792, 398 P.3d 1052 (2017) (Madsen, J., concurring)). He reasons that establishing that Rothwell did not feel threatened or pressured was relevant to show that her recantation at trial was genuine and not forced by external pressures. The State argues that Case was essentially trying to elicit testimony that Rothwell did not want to testify, which was irrelevant.

Appellate courts review limitations on the scope of cross-examination for manifest abuse of discretion. *Lile*, 188 Wn.2d at 782. "A manifest abuse of discretion arises when 'the trial court's exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons.'" *Id.* (internal quotation marks omitted) (quoting *Darden*, 145 Wn.2d at 619). Under ER 401, evidence is relevant if it has a tendency to make a fact that is of consequence more or less probable. *State v. Scherf*, 192 Wn.2d 350, 386-87, 429 P.3d 776 (2018). "Credibility evidence is particularly relevant when the witness is central to the prosecution's case." *State v. Lee*, 188 Wn.2d 473, 488,

396 P.3d 316 (2017). "Where the credibility of the complaining witness is crucial, her possible motive to lie" is a relevant issue. *State v. Lubers*, 81 Wn. App. 614, 623, 915 P.2d 1157 (1996).

The excluded testimony was relevant because testimony from Rothwell that she did not feel pressured or threatened would have tended to make it more probable that she was telling the truth at trial. Rothwell was clearly central to the prosecution's case, as her initial written statement formed the basis for the charges against Case. Any evidence that would affect the credibility of her contradictory testimony at trial would therefore be particularly relevant. *See Lee*, 188 Wn.2d at 488. The trial court's decision to exclude this evidence as irrelevant was therefore based on untenable grounds and so was an abuse of the trial court's discretion.

C.    The Trial Court Did Not Violate Case's Right of Confrontation or Right to Present a Defense

Because a defendant's Sixth Amendment rights are not absolute, we must balance the State's interest in excluding Rothwell's testimony against Case's need for the information pertaining to the motivations influencing Rothwell's trial testimony. *See Arndt*, 194 Wn.2d at 812; *see also Darden*, 145 Wn.2d at 621-22. If evidence is of high probative value, there may be no state interest compelling enough to preclude its introduction. *Arndt*, 194 Wn.2d at 812.

In *Arndt*, the court held that the defendant's Sixth Amendment rights were not violated because the trial court's evidentiary rulings did not eliminate her entire defense and she was still able to advance the defense theory of the case. *Id*. at 814. The court distinguished Arndt's situation from *State v. Jones*, where "the trial court interpreted a rape shield law to preclude the defendant from presenting any evidence that the victim had voluntarily engaged in an 'all-night, drug-induced sex party.'" *Id*. at 812-13 (quoting *State v. Jones*, 168 Wn.2d 713, 721, 230 P.3d 576 (2010)). The *Arndt* court explained that the evidence at issue in *Jones* "was 'evidence of extremely

8

high probative value; it [was] Jones's entire defense.'" *Id.* at 813 (quoting *Jones*, 168 Wn.2d at 721). In contrast, Arndt was still permitted to present evidence that pointed to an alternative cause for the fire that she was accused of starting. *Id.* at 813-14.

*Jones* and *Arndt* make clear that it is not enough that the excluded evidence simply be relevant in that it makes a fact of consequence more or less probable. To show a Sixth Amendment violation, the excluded evidence must be of extremely high probative value. *Id.* Here, although Case was unable to elicit testimony that Rothwell had not been threatened or pressured about testifying, Rothwell was still permitted to testify that she did not feel any fear about testifying and that she was not afraid of Case. Case therefore was still able to argue his defense theory that Rothwell's recantation was genuine and not the result of fear or external pressure. Unlike in *Jones*, the excluded testimony was essentially cumulative and did not carry "extremely high probative value." 168 Wn.2d at 721.

Thus, the trial court did not violate Case's right of confrontation by limiting the scope of Rothwell's testimony.

D.      The Error was Harmless

Having concluded there was no constitutional violation, we next determine whether the trial court's evidentiary error was harmless, applying the nonconstitutional harmless error standard. *State v. Barry*, 183 Wn.2d 297, 317, 352 P.3d 161 (2015). Case must show a reasonable probability that, absent the error, the outcome of his trial would have been materially affected. *Id.* at 317-18.

We hold that the error was harmless. Even with the trial court's limitations on Case's cross-examination of Rothwell, Case was still able to elicit testimony that Rothwell did not fear him.

This testimony supported his theory that Rothwell's recantation was genuine and not the result of coercion. Case has failed to show a reasonable probability that his trial would have ended differently had the excluded testimony been admitted.

## II. CAIN'S TESTIMONY

Case argues that Cain's testimony about counterintuitive victim responses invaded the province of the jury and violated his right to a jury trial because it constituted an improper comment on Rothwell's credibility. We disagree.

A.     RAP 2.5(a)(3)

Case did not object to Cain's testimony at trial. To bring this claim for the first time on appeal, he must therefore show that allowing Cain to testify was a manifest error affecting a constitutional right. RAP 2.5(a)(3). "Application of RAP 2.5(a)(3) depends on the answers to two questions: '(1) Has the party claiming error shown the error is truly of a constitutional magnitude, and if so, (2) has the party demonstrated that the error is manifest?'" *State v. Grott*, 195 Wn.2d 256, 267, 458 P.3d 750 (2020) (quoting *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015)).

The focus of the manifest error inquiry "must be on whether the error is so obvious on the record that the error warrants appellate review." *State v. O'Hara*, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009). Manifest error requires that the defendant make a plausible showing that the asserted error had practical and identifiable consequences at trial. *Grott*, 195 Wn.2d at 269. To make this determination, "'the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error.'" *Id.* (quoting *O'Hara*, 167 Wn.2d at 100).

B.    Case Does Not Show a Manifest Error

Case alleges that Cain's testimony violated his right to a jury trial. Improper opinion testimony violates the defendant's constitutional right to a jury trial because it invades the fact-finding province of the jury. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). Case clearly raises an issue of constitutional magnitude.

Under *Grott*, we next determine whether Case makes a plausible showing that Cain's testimony had practical and identifiable consequences in his trial. 195 Wn.2d at 269. Case argues that the jury's questions to the court during deliberations suggest that the jury was grappling with how much weight to afford Cain's explanation for Rothwell's testimony. The jury asked the court about Case's criminal history and whether the police had responded to any prior incidents between Case and Rothwell, suggesting that the jury was curious whether there had been a history of abuse in their relationship.

"It is not enough that the Defendant allege prejudice—actual prejudice must appear in the record." *State v. McFarland*, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995). "Admission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a 'manifest' constitutional error." *Kirkman*, 159 Wn.2d at 936. Rather, because the manifest error exception is narrow, it "requires a nearly explicit statement by the witness" on their opinion of the accusing victim's credibility. *Id.*

There was no such explicit statement here and, in fact, Cain studiously avoided making such a statement. Cain expressly did not discuss the facts of this case in his testimony or make any reference to Rothwell. He explained that he had purposefully avoided learning the particular facts of this case. Instead, he testified in general terms about some of the typical behaviors exhibited by

11

some survivors of domestic violence. Under *Kirkman*, Cain's testimony therefore did not amount to a manifest constitutional error requiring appellate review. *Id.*

In addition, important to the manifest error inquiry is whether the trial court properly instructed the jury. *State v. Blake*, 172 Wn. App. 515, 531, 298 P.3d 769 (2012). As in *Blake*, the jurors here were properly instructed that they were the sole judges of witness credibility and the value or weight to be given to each witness's testimony. This instruction included informing the jury that it could consider factors such as the witness's manner, their personal interest in the outcome of the case, any bias or prejudice that they may have shown, and the reasonableness of their statements in the context of the other evidence. Absent evidence to the contrary, we presume the jury followed the trial court's instructions. *Id*. Accordingly, appellate review of this issue is not warranted under RAP 2.5(a)(3). *Id.*

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Case argues that he received ineffective assistance of counsel because his counsel did not object to Cain's testimony. We hold that Cain's testimony was not improper, and defense counsel was not ineffective for failing to object.

A.    Ineffective Assistance of Counsel Generally

The Sixth Amendment and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To demonstrate that he received ineffective assistance of counsel, Case must show both (1) that defense counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Estes*,

188 Wn.2d 450, 458, 395 P.3d 1045 (2017). We strongly presume that defense counsel's performance was not deficient. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012).

Prejudice ensues if there is a reasonable probability that the result of the proceeding would have been different had defense counsel not performed deficiently. *Estes*, 188 Wn.2d at 458. For a claim based on counsel's failure to object, the defendant "must establish that an objection likely would have been sustained." *In re Det. of Monroe*, 198 Wn. App. 196, 205, 392 P.3d 1088 (2017). Because both prongs of the ineffective assistance of counsel test must be met, the failure to demonstrate either prong will end our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

B.      Counsel's Failure to Object Based on Case's Right to a Jury Trial

To determine whether counsel was deficient for failing to object to Cain's testimony, we must first determine whether Cain's testimony constituted an improper comment on Rothwell's credibility violating his constitutional right to a jury trial. We hold that Cain's testimony was proper, and counsel was not deficient for failing to object.

1.      Expert testimony on typical victim behavior

Improper opinion testimony violates the defendant's constitutional right to a jury trial and invades the fact-finding province of the jury. *Kirkman*, 159 Wn.2d at 927. A witness may not give an opinion on another witness's credibility. *Id.* However, "expert testimony generally describing symptoms exhibited by victims may be admissible when relevant and when not offered as a direct assessment of the credibility of the victim." *State v. Stevens*, 58 Wn. App. 478, 496, 794 P.2d 38 (1990).

In *State v. Thach*, 126 Wn. App. 297, 314, 106 P.3d 782 (2005), we concluded that such expert testimony "is improper in the context of a trial where the victim has testified and the State is impeaching her. It becomes an opinion on the credibility of the victim's courtroom testimony," which amounts to a comment on the witness's credibility at the time of trial. In that case, a police officer referred in his testimony to a study showing that many survivors of domestic violence recant their statements at trial because of fear, further abuse, or financial difficulties. *Id*. We held this testimony was improper because the victim had testified and, although the officer spoke in general terms, his testimony amounted to a comment on the victim's credibility at trial. *Id.*[1]

The Washington Supreme Court has come to a different conclusion with regard to general testimony. In *State v. Ciskie*, 110 Wn.2d 263, 280, 751 P.2d 1165 (1988), the court allowed general expert testimony on the aspects of post-traumatic stress disorder specifically relevant to survivors of domestic violence because the expert witness stopped short of indicating her assessment of the victim's credibility in that case. Although the court noted that it may have been better to bar this testimony altogether, it ultimately concluded that the trial court did not abuse its discretion nor invade the province of the jury by admitting the testimony and limiting it to avoid a statement about the victim's credibility. *Id.*

In *Stevens*, an expert witness testified on the general symptoms typically exhibited by survivors of sexual abuse, but did not say whether the victims in that case exhibited such symptoms themselves. 58 Wn. App. at 496. Relying on *Ciskie*, Division One held that this testimony was admissible because "the expert did not testify that the victims fit any controversial 'profile' or

---

[1] Nevertheless, the *Thach* court concluded that the error in that case was not manifest. 126 Wn. App. at 314.

'syndrome' of abuse. . . . She only testified generally as to behaviors consistent in sexually abused children that she had observed in her own experience working in the field." *Id.* at 497.

We recognize that this case is slightly different from *Ciskie* and *Stevens* because here, the State offered the testimony in order to attack the credibility of Rothwell's trial testimony. In *Stevens*, the State offered expert testimony about the general behaviors typically exhibited by child abuse victims in order to explain why the victims there had acted out in certain ways following their abuse, but did not link such testimony to any of the victim's trial testimony or their credibility as witnesses. *Id.* at 496-97. In *Ciskie*, the State offered general expert testimony on the aspects of post-traumatic stress disorder specifically relevant to survivors of domestic violence in order to explain why the victim had stayed with her abuser and did not report him to the police right away. 110 Wn.2d at 277-78. Similar to *Stevens*, the State did not use that testimony to buttress or undermine the victim's credibility as a trial witness.

Nevertheless, neither *Stevens* nor *Ciskie* went as far as *Thach* to say that such testimony cannot be admitted at all if the victim testifies, even where the expert testifies only in general terms. And in *State v. Green*, 182 Wn. App. 133, 147, 328 P.3d 988 (2014), we more recently held that expert testimony on the general behaviors of victims of domestic violence "would not have expressed an opinion regarding [the victim's] credibility or invaded the jury's function," and so the trial court abused its discretion in excluding it.

Other jurisdictions have persuasively concluded that such expert testimony is admissible even where the victim testifies, so long as the expert does not directly comment on the victim's credibility or link their testimony to the victim's behavior. The Connecticut Supreme Court has explained that an expert does not comment on a victim witness's credibility if they testify on

counterintuitive responses in general terms and do not link that discussion to the victim witness's behavior, because "the jury ha[s] the right to consider [an expert's] testimony in determining whether to believe the victim's prior statement or her testimony at trial." *State v. Borrelli*, 227 Conn. 153, 173, 629 A.2d 1105 (1993). It was therefore permissible for the expert "to present to the jury possible explanations for why a victim of abuse would completely recant her accusations, explanations that in all likelihood were beyond the jury's experience and knowledge." *Id.* at 174. "[T]here is a 'critical distinction between admissible expert testimony on general or typical behavior patterns of . . . victims and inadmissible testimony directly concerning the particular victim's credibility.'" *Id.* at 173 (second alteration in original) (quoting *State v. Spigarolo*, 210 Conn. 359, 379, 556 A.2d 112 (1989)).

In Oregon, "an expert may comment on whether a witness's inconsistent statements are consistent with, or similar to, the 'common phenomenon' of false recantation by abuse victims," as long as they "'assist, not supplant, the jury's assessment of credibility.'" *State v. Leahy*, 190 Or. App. 147, 153, 78 P.3d 132 (2003) (quoting *State v. Middleton*, 294 Or. 427, 436, 657 P.2d 1215 (1983); *State v. Remme*, 173 Or. App. 546, 562, 23 P.3d 374 (2001)). The Oregon Court of Appeals recently relied on this principle to uphold the admission of such testimony where the expert "left unconnected the final dot in the picture that the [S]tate sought to draw." *State v. Brand*, 301 Or. App. 59, 69, 455 P.3d 960 (2019). Instead, "it remained up to the jury to make that connection—if it so chose—by assessing the complainant's credibility for itself, rather than simply deferring to the opinion of the [S]tate's witness." *Id.* at 69-70.

California's rules of evidence expressly allow for expert testimony on victim behaviors as a general matter, Cal. Evid. Code, § 1107(a), and California courts have held that such testimony

"may be used *indirectly* to assist the jury in evaluating whether the alleged victim's statements are believable." *People v. Brackins*, 37 Cal. App. 5th 56, 71, 249 Cal. Rptr. 3d 261 (2019). The court in *Brackins* explained that an expert who knows nothing about the facts of the case may testify about abstract propositions, including the fact that abuse victims often recant or minimize the abuse. *Id.* "This information could properly be used by the jury to evaluate whether [a victim's] recantations and minimization of the alleged abuse was part of her reaction to abuse or was instead due to her having lied about the alleged abuse in the first place." *Id.* at 71-72.

Many other jurisdictions adhere to the principle that expert testimony of this kind is admissible when the victim testifies so long as the expert does not opine on whether the specific victim exhibited counterintuitive victim responses or testify regarding the specific relationship between the defendant and the victim. *See, e.g.*, *Arcoren v. United States*, 929 F.2d 1235, 1240-41 (8th Cir. 1991); *People v. Wallin*, 167 P.3d 183, 187-88 (Colo. Ct. App. 2007); *Odom v. State*, 711 N.E.2d 71, 76-78 (Ind. Ct. App. 1999); *Commonwealth v. Goetzendanner*, 42 Mass. App. Ct. 637, 642-43, 679 N.E.2d 240 (1997); *People v. Christel*, 449 Mich. 578, 580, 537 N.W.2d 194 (1995); *State v. Grecinger*, 569 N.W.2d 189, 194 (Minn. 1997); *State v. Stringer*, 271 Mont. 367, 377-78, 897 P.2d 1063 (1995); *People v. Ellis*, 170 Misc. 2d 945, 955, 650 N.Y.S.2d 503 (1996); *Scugoza v. State*, 949 S.W.2d 360, 363 (Tex. Ct. App. 1997); *but see Commonwealth v. Johnson*, 456 Pa. Super. 251, 255, 690 A.2d 274 (1997) ("[O]ur courts have generally excluded expert testimony that discusses behavior patterns that are common to victims of sexual assault. Such testimony encroaches upon the jury's function of evaluating witness credibility.").

Based on our review of other jurisdictions, *Thach* appears to reflect a minority opinion. We agree with the majority of other jurisdictions and overrule *Thach*, remaining consistent with *Ciskie*,

*Stevens*, and *Green.* Expert witnesses may testify on general characteristics or conduct typically exhibited by survivors of domestic violence. We reaffirm that such testimony must not state that a specific victim witness exhibits the responses or characteristics of a crime victim or state the expert's opinion of the victim's credibility.

2.      Cain's testimony

We accordingly hold that Cain's testimony did not amount to an improper comment on Rothwell's credibility because Cain never discussed the specifics of this case, nor did Cain in any way connect Rothwell's recantation to the general counterintuitive victim responses that he discussed. In this way, Cain's testimony was arguably even less problematic than the testimony in *Ciskie*, because in *Ciskie* the expert was permitted to share her diagnosis of the victim as suffering from post-traumatic stress disorder. 110 Wn.2d at 279. That testimony was nevertheless permissible because, as here, the expert did not indicate their own assessment of the victim's credibility. *Id.* at 280.

That the State referenced Cain's testimony in closing argument did not transform Cain's general, objective testimony into a specific comment on Rothwell's credibility. Prosecutors' arguments in closing are not evidence, and "prosecutors have wide latitude to argue reasonable inferences from the facts concerning witness credibility." *State v. Warren*, 165 Wn.2d 17, 30, 195 P.3d 940 (2008). Nothing in *Ciskie*, *Stevens*, or *Green* prevents the State from drawing reasonable inferences from an expert's testimony on the general characteristics of counterintuitive victim responses to highlight credibility issues for the jury. Just because an expert's testimony is relevant to the jury's determination of witness credibility does not mean that the testimony itself is a comment on witness credibility.

Under *Ciskie*, *Stevens*, and *Green*, Cain's testimony was proper. Cain did not invade the province of the jury when he testified generally about counterintuitive victim responses without linking his testimony to the credibility of Rothwell's recantation. Because the evidence was properly admitted, defense counsel was not deficient for failing to object.

C.     Counsel's Failure to Object Based on Rules of Evidence

Case also argues that counsel should have objected to Cain's testimony based on ER 402, 403, and 702. Citing *Ciskie*, 110 Wn.2d at 279, Case reasons that Cain's testimony was not relevant because the State failed to lay adequate foundation establishing a pattern of abuse between Case and Rothwell. But nowhere in *Ciskie* did the court suggest that establishing a pattern of abuse was a prerequisite to offering expert testimony on counterintuitive victim responses. Rather, the court upheld the admission of such testimony because it "was helpful to the jury's understanding of a matter outside the competence of an ordinary lay person," and so "clearly satisfied the requirements of ER 702." *Id.* The court went on to explain that the trial court could have excluded the testimony under ER 403 if it found a danger of unfair prejudice, but that the trial court properly toed the line by barring the expert from presenting her diagnosis of the victim as a rape victim. *Id.*

Here, the trial court similarly confirmed that Cain had not examined Rothwell himself and would not link his testimony in any way to the facts of this case. It therefore would have been well within the trial court's discretion not to exclude Cain's testimony under ER 403 had counsel objected on that basis. And similar to *Ciskie*, this testimony was helpful to the jury to understand why a survivor of domestic violence might recant her accusation and so was admissible under ER 702. Case therefore has not shown that counsel was deficient for failing to object on these grounds or that an objection likely would have been sustained.

## CONCLUSION

We affirm. We hold that although the trial court abused its discretion in limiting Case's cross-examination of Rothwell, this did not rise to the level of a violation of Case's Sixth Amendment rights and the error was harmless. We overrule *Thach* and hold that Cain's testimony was not improper. Therefore, defense counsel was not ineffective for failing to object.

_____
Glasgow, J.

We concur:

_____
Maxa, P.J.

_____
Cruser, J.