**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82009-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| QUINTON MARQUETTE HARRIS, | ) | |
| | ) | PUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Quinton Harris appeals the trial court's judgment and sentence finding him guilty of three counts of violation of a no-contact order. Harris argues that the trial court erred by admitting evidence of a prior assault. Harris also argues that he should be resentenced in light of our Supreme Court's opinion in State v. Blake, 197 Wn.2d 170, 183, 491 P.3d 521 (2021). We agree in respect to Harris's sentence and remand for resentencing under Blake. We otherwise affirm.

FACTS

Harris and Jessica Bohannan have had a long romantic relationship. Bohannan has two young children, the youngest of which is the biological child of Harris. Due to prior domestic violence, there was a no-contact order prohibiting Harris from contacting

Bohannan directly or indirectly, or coming within 300 feet of her residence. Bohannan was against the existence of the no-contact order.

On June 28, 2020, Harris went to Bohannan's Everett apartment. Bohannan's neighbor, Debbie Alinen, was present that day. At one point, Alinen heard through her and Bohannan's shared wall thumping, screams for help from Bohannan, and pleas from her children for the commotion to stop. Alinen called 911 and described the ongoing events to the operator.

Police arrived shortly afterward, including Officers John Coats and Bronwyn Wallace. Bohannan eventually allowed the officers inside, where they noticed what appeared to be fingerprints on her neck. A later body check revealed red marks on Bohannan's arms and body. Bohannan ultimately told Wallace that Harris assaulted her, but did not want the statement in writing or photos of her injuries.

Shortly thereafter, Officer Paul Stewart was in his patrol vehicle when he saw Harris on the roadside. Aware of Harris's involvement in the incident with Bohannan, Stewart turned his vehicle around; Harris began sprinting away. Stewart ultimately found and arrested Harris using the assistance of a tracking canine.

While incarcerated, Harris had repeated telephone and video-call contact with Bohannan. The jail system that monitors calls captured the communications. The State charged Harris with three counts of violation of a no-contact order—count I being a felony for the incident at Bohannan's apartment and counts II and III being misdemeanors for Harris's communication with Bohannan from jail. The jury found Harris guilty as charged. In determining Harris's offender score for sentencing, the

-2-

court included in its calculations Harris's prior felony conviction for possession of a controlled substance.

Harris appeals.

ANALYSIS

A. Prior Assault

Harris argues that the trial court erred by admitting evidence of his prior assault of Bohannan. We disagree.

Prior to trial, the State notified the trial court through a motion in limine that, should Bohannan recant her statements to the police that Harris assaulted her, it intended to introduce Harris's prior conviction for assaulting Bohannan to assist the jury in evaluating her credibility. Harris moved to exclude this prior conviction. The trial court addressed the issue at length, ultimately determining that it could not rule on the motions at the moment if it did not know whether Bohannan would recant her statements to the police. The court did rule, however, that should there be evidence admitted ultimately recanting Bohannan's statements, it was "going to allow it to be shown that an assault occurred, but without going into the specifics of the assault."

Bohannan testified and recanted her statements to the police, stating that the confrontation with Harris was only verbal and that she did not tell the officers that he assaulted her. The State moved to cross-examine Bohannan consistent with the court's pretrial ruling that, if Bohannan recanted, the State could address the prior assault. The court ruled that the State could proceed and Bohannan testified that Harris had previously assaulted her.

-3-

This court reviews evidentiary rulings for an abuse of discretion. State v. Hudson, 150 Wn. App. 646, 652, 208 P.3d 1236 (2009). A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds. State v. Lord, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007)).

Evidence Rule 404(b) prohibits a court from admitting "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." State v. Foxhoven, 161 Wn.2d 168, 175, 163 P.3d 786 (2007). Evidence of a defendant's prior assault of a victim is generally inadmissible if the defendant assaults the victim on a later occasion. The evidence may, however, become admissible for reasons such as "assist[ing] the jury in judging the credibility of a recanting victim." State v. Magers, 164 Wn.2d 174, 186, 189 P.3d 126 (2008).

Before admitting ER 404(b) evidence, a trial court "must (1) identify the purpose for which the evidence is sought to be introduced, (2) determine whether the evidence is relevant to prove an element of the crime charged, and (3) weigh the probative value against its prejudicial effect." State v. Lough, 125 Wn.2d 847, 852, 889, P.2d 487 (1995). This analysis must be conducted on the record. State v. Smith, 106 Wn.2d 772, 776, 725 P.2d 951 (1986). If the evidence is admitted, a limiting instruction must be given to the jury. Lough, 125 Wn.2d at 864.

Here, the trial court supported its decision to admit Harris's prior assault, stating:

Based on the totality of the circumstances, No. 1, I do find that the State can prove the prior assault by a preponderance.

Two, I find that the State has shown a reason to admit this assuming there are inconsistent statements coming in for the purposes that are discussed in the case law as to her credibility, or a better way of putting it is explaining why her statements might change, as discussed in case law.

No. 3, if it is brought in by a method that doesn't get into the specifics. I do find that the probative value would outweigh the prejudice, assuming again for the moment that we end up with inconsistent statements from this witness coming in.

So I'm making my rulings under ER 404 and 403. I have done balancing considering the entirety of the facts.

The trial court also addressed a limiting instruction with the parties on two occasions: once during proceedings and once prior to jury instructions and closing arguments. Harris ultimately agreed with the limiting instructions proposed and subsequently delivered by the court.

The trial court did not abuse its discretion in admitting evidence of Harris's prior assault of Bohannan. The court determined that the State could prove the assault by a preponderance of evidence. The court also identified the purpose of introducing the prior assault—to challenge Bohannan's credibility. Finally, the court properly balanced the probative versus prejudicial value of introducing the prior assault, and delivered a limiting instruction to the jury. These actions do not rise to an abuse of discretion.

Harris further contends that his prior assault was inadmissible absent expert testimony informing the jury how any prior assault rendered Bohannan less credible. Harris explains that such testimony is required to establish why his prior assault made Bohannan less credible, causing the jury confusion. Contrary to Harris's contention, no Washington court has adopted such a requirement, and we decline to do so.

This court first addressed expert testimony's role in assault-victim credibility in State v. Grant, 83 Wn. App. 98, 101, 920 P.2d 609 (1996). There, the victim made inconsistent statements regarding the assault prior to trial, but did not recant any statements during testimony. The court allowed testimony from the victim's therapist to

"[entitle the jury] to evaluate her credibility with full knowledge of the dynamics of a relationship marked by domestic violence and the effect such a relationship has on the victim." Grant, 83 Wn. App. at 108. While the court determined that expert testimony may be helpful in evaluating victim credibility, it did not adopt such testimony as a requirement for introducing prior assaults.

In a later decision, Division Two of this court expressly rejected any requirement that expert testimony must accompany evidence of prior assault for credibility determinations. In State v. Thach, 126 Wn. App. 297, 314, 106 P.3d 782 (2005), the court held that expert testimony regarding a domestic violence victim's attempts to appease their abusers by changing their prior statements at trial was an improper comment on witness conduct and thus impermissible.[1] Thach has since been expressly overruled by State v. Case, 13 Wn. App. 2d 657, 678, 466 P.3d 799 (2020). After extensive review of a number of jurisdictions, the Case court held that "expert witnesses may testify on general characteristics or conduct typically exhibited by survivors of domestic violence." But "such testimony must not state that a specific victim witness exhibits the responses or characteristics of a crime victim or state the expert's opinion of the victim's credibility." Case, 13 Wn. App. 2d at 678.[2]

---

[1] Division Two upheld Thach in State v. Cook, 131 Wn. App. 845, 852-53, 129 P.3d 834 (2006). There, the court stated, "while expert testimony may assist a jury in understanding the intricacies of relationships marked by violence, we do not believe such testimony is necessary in order to assess the state of mind of an individual whose acts are inconsistent with a report of abuse. The jury may draw from its own common knowledge and the evidence . . . to determine if the victim's inconsistent behavior is the result of a fear of retaliation, misguided affection, internalized shame or blame, or a continuing dependence on the defendant." Cook, 131 Wn. App. at 852-53.

[2] Harris directs us to State v. Gunderson, 181 Wn.2d 916, 337 P.3d 1090 (2014). Gunderson is inapplicable to the present case. In Gunderson, the court declined to extend the introduction of prior acts of domestic violence to instances where the victim had neither recanted nor contradicted prior statements. 181 Wn.2d at 925. Rather, the evidence had been introduced to impeach a victim who was denying an incident of violence occurred altogether despite contradicting testimony otherwise. Gunderson, 181 Wn.2d at 920-21.

Based on our review of Washington precedent, we decline to adopt a requirement that expert testimony must accompany evidence of prior assault to assist assessment of witness credibility. We do not, however, expressly prohibit such expert witness testimony. Rather, it is within the purview of the trial court to assess the proposed introduction of expert testimony and its adherence to requisite evidentiary rules.

B. Offender Score

Harris argues that he should be resentenced, and that his prior narcotics convictions should not be included in his offender score. The State concedes this issue. We accept the State's concession.

The calculation of Harris's offender score included a prior felony conviction for possession of a controlled substance. The Washington Supreme Court has since held that the strict liability statute criminalizing unintentional, unknowing passive non-conduct is unconstitutional. Blake, 197 Wn.2d at 183. Because Harris's offender score included a prior conviction for violating a statute that has since been found unconstitutional, we remand to the trial court to resentence Harris without including the unconstitutional possession offense. See State v. Tili, 148 Wn.2d 350, 358-60, 60 P.3d 1192 (2003).

We remand for resentencing consistent with Blake. We otherwise affirm.

_Mann, C.J._

WE CONCUR:

_Cohen, J._

_H. & L. J._