# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57972-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| LYUDMILA V. TADZHIBAYEV, | |
| Appellant. | |

CHE, J. — Lyudmila Tadzhibayev appeals her conviction for first degree burglary. Tadzhibayev argues (1) the State violated her right to a fair trial due to prosecutorial misconduct in closing argument, (2) her counsel was ineffective for failing to object to the prosecutor's argument during closing, (3) her counsel was ineffective for failing to object under Evidence Rule (ER) 702 to testimony that the complaining witness was experiencing the effects of an adrenaline rush, and (4) the crime victim penalty assessment (VPA) and DNA collection fee should be stricken. The State concedes that the legal financial obligations (LFOs) should be stricken.

We hold Tadzhibayev's prosecutorial misconduct claim and ineffective assistance of counsel claims fail. Thus, we affirm the conviction but reverse the challenged LFOs and remand to the trial court to strike the VPA and DNA collection fee from Tadzhibayev's judgment and sentence.

FACTS

BACKGROUND

The State charged Veniamin Zimin and Tadzhibayev with first degree burglary, alleging that, on October 31, 2020, Zimin and Tadzhibayev entered Nina Yelanskaya's apartment and assaulted her.

Zimin and Yelanskaya were previously in a romantic relationship and had four children together. Despite a no-contact order protecting Yelanskaya against Zimin, Yelanskaya permitted Zimin to spend time with their children at her apartment when she was not there.

On October 31, Tadzhibayev, Zimin's girlfriend, drove Zimin to Yelanskaya's apartment complex to deliver birthday presents to AZ, Zimin and Yelanskaya's daughter, who had just turned 12 years old. When they arrived, Zimin texted AZ, who met Zimin and Tadzhibayev in the parking lot. Yelanskaya did not know Zimin would be coming to her apartment complex.

Yelanskaya and her other children followed after AZ to the parking lot, where Zimin gave AZ cake, flowers, and a balloon. Yelanskaya and Tadzhibayev exchanged insults. Yelanskaya threatened to get a restraining order against Tadzhibayev and took a picture of Tadzhibayev's car.

Yelanskaya and her children returned to the apartment. At some point when Zimin and Tadzhibayev were leaving, Yelanskaya called 911. According to Yelanskaya, about 10 minutes after she returned to her apartment, she heard someone knock on the front door. When she opened the door, she saw Tadzhibayev and tried to shut the door, but Tadzhibayev forced her way inside, pushed Yelanskaya back, and then hit Yelanskaya in the chest. Zimin also entered the apartment. Yelanskaya screamed for help, which was heard by a neighbor. As she turned

towards her children, someone hit her in the head. At some point, Yelanskaya was kicked, and Zimin struck her leg after Tadzhibayev told him to hit her.

As Yelanskaya continued to yell for help, Zimin and Tadzhibayev ran out of the apartment. Yelanskaya photographed them heading down the stairs, and then she called 911 a second time. That afternoon, Yelanskaya sought medical attention, and a nurse examined a bruise on her leg, which Yelanskaya photographed that evening after waking up from leg pain.

Officer Jason Haigwood responded to the 911 calls, arriving at 1:13 p.m. According to Officer Haigwood, based on computer-aided dispatch (CAD) logs, Yelanskaya called 911 at 12:49 p.m. and reported "harassment." Rep. of Proc. (RP) at 748. Yelanskaya called 911 again at 12:52 p.m. and reported she had just been assaulted. Officer Andrew Dunbar testified consistently with the times above.

The court admitted exhibit 12, a recording of the second 911 call, as an excited utterance under ER 803(a)(2). The State authenticated the recording based on Yelanskaya's testimony and cited to *State v. Jackson*, 113 Wn. App. 762, 769, 54 P.3d 739 (2002) as its authority (holding "that in proper circumstances, a proponent can authenticate a tape recording with conversation on it by calling a witness who has personal knowledge of the original conversation and the contents of the tape; who testifies that the tape accurately portrays the original conversation; and who identifies each relevant voice heard on the tape"). Tadzhibayev does not assign error to the trial court's decision to admit exhibit 12, the second 911 call.

When Officer Haigwood contacted Yelanskaya at her apartment, she appeared emotional and accused Zimin of breaking into her apartment and attacking her. Officer Haigwood described Yelanskaya as seeming "upset," "overwhelmed," and "shaken." RP at 750. He also

3

testified that, "[Yelanskaya] was exhibiting signs of someone who had just had a significant release of adrenaline. She—her hands were shaking. When she was talking to me, she was talking very rapidly but her voice, like, was trembling as she said it." RP at 750.

AZ explained that, after she returned to the apartment with her gifts, Zimin called to tell her he had forgotten to give her birthday money and was coming back to do so. While in her room, AZ heard yelling and an argument, left her room, and then saw her parents physically fighting. AZ saw Tadzhibayev inside the apartment, "right by the door." RP at 596.

AZ described her parents hitting each other and said she pushed Tadzhibayev away. She also claimed her father hit her mother, she feared for her mother's safety, and she responded by hitting her father and yelling at him to stop hitting her mother. The fight ended when Zimin gave her the birthday money and left with Tadzhibayev.

According to Tadzhibayev, soon after she and Zimin gave AZ her birthday presents, they left when Yelanskaya started insulting her and photographing her car. After they left, AZ called Zimin and asked if the gifts she received were her only presents. Zimin had forgotten to give AZ birthday money, so they returned to Yelanskaya's apartment complex.

Tadzhibayev denied ever entering Yelanskaya's apartment or having any physical contact with her. She testified that AZ came down the stairs, that she and Zimin stayed at the bottom of the stairs, that Zimin gave AZ the money, and that they then left as Yelanskaya, standing at the top of the stairs, yelled at them to leave.

Zimin stated he was at the bottom of the stairs at some point, he did not remember ever going up the stairs, he did not go into Yelanskaya's apartment, and he did not have any physical contact with her on the day of the incident.

4

CLOSING ARGUMENT

Defense counsel noted officer testimony established that a mere 3 minutes passed between Yelanskaya's two calls to 911. Defense counsel argued it was not possible for the defendants to have left the apartment complex, spoken to AZ on the phone, returned to the complex to give AZ her birthday money, entered Yelanskaya's apartment, assaulted her, and left again, within the brief period of time between the two 911 calls.

On rebuttal, the State acknowledged one of Tadzhibayev's "princip[al] arguments" was that 3 minutes was not long enough for the alleged events to have occurred. RP at 1033. The State played exhibit 12, the recording of the second 911 call that was admitted into evidence, and pointed out the time announced at the beginning of the recording, "October 31, 2020, 13:06:09." RP at 465; Ex. 12 (Video VPD 20-017881 911 Audio 20374674) at 00:00-00:08.

The State argued that the time between the calls was greater than 3 minutes. The State argued Yelanskaya placed the second call at 1:06 p.m., not 12:52 p.m. as the officers testified, giving the defendants an additional 14 minutes to return to the apartment complex, enter Yelanskaya's apartment, assault her, and leave. The State acknowledged that the officers testified Yelanskaya placed her second call to 911 at 12:52 p.m. But the State pointed out that Officer Dunbar needed assistance to read the CAD log earlier in the trial. The State then argued, "[Defense counsel's] big thing was it's impossible in this three minute time line. So now that we've cleared that, does their argument still hold weight? . . . I would argue [14 minutes] is plenty of time." RP at 1033. Defense counsel did not object to the State's argument.

No. 57972-3-II

The jury found Tadzhibayev guilty of first degree burglary. At sentencing, the trial court found that Tadzhibayev was indigent because she receives public assistance and an annual income, after taxes, of 125 percent or less of the current federal poverty level. RCW 10.101.010(3)(a)-(c).

Tadzhibayev appeals.

## ANALYSIS

### I. PROSECUTORIAL MISCONDUCT

Tadzhibayev argues the prosecutor committed misconduct when he argued during rebuttal that the computer-generated time stamp in exhibit 12 was the actual time Yelanskaya placed her second 911 call, thereby leaving plenty of time to commit the burglary. Relatedly, Tadzhibayev contends that the prosecutor improperly undermined the defense's argument on the timing of the alleged crimes. We disagree.

A.    *Legal Principles*

Because Tadzhibayev did not object to the prosecutor's argument on rebuttal, she waives her prosecutorial misconduct claim unless she shows (1) the prosecutor's comments were improper, (2) the comments were both flagrant and ill-intentioned, (3) a curative instruction could not have obviated the effect of the improper comments, and (4) it was substantially likely the misconduct affected the verdict. *State v. Gouley*, 19 Wn. App. 2d 185, 201, 494 P.3d 458 (2021).

When reviewing a defendant's claim that prosecutorial misconduct requires reversal of their conviction, we review the prosecutor's statements in the context of the entire case. *State v.*

6

*Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011). A prosecutor "can certainly argue that

the evidence does not support the defense theory." *State v. Lindsay*, 180 Wn.2d 423, 431, 326

P.3d 125 (2014). And prosecutors have "wide latitude to argue reasonable inferences from the

evidence, including evidence respecting the credibility of witnesses." *Thorgerson*, 172 Wn.2d

at 448.

B.       *Tadzhibayev's Prosecutorial Misconduct Claim Fails*

First, Tadzhibayev must show the prosecutor's argument was improper. She contends the

prosecutor's argument was improper because there was no evidence indicating the time stamp in

exhibit 12 was "both accurate and designed to indicate when the call was actually placed (rather

than some other time in the process of retaining the recording)." Reply Br. of Appellant at 4.

Tadzhibayev also contends the prosecutor improperly undermined the defense's argument on the

timing of the alleged crimes.

But the prosecutor's argument was merely a rebuttal to defense counsel's argument that

3 minutes was not long enough for the alleged events to have occurred. The prosecutor was

allowed to argue that the admitted evidence did not support the defense theory. *Lindsay*, 180

Wn.2d at 431. Furthermore, the prosecutor's rebuttal was consistent with Yelanskaya's

testimony that she heard someone knock on her front door about 10 minutes after she returned to

her apartment. And the prosecutor exercised his wide latitude to argue a reasonable inference

from the admitted evidence—that Tadzhibayev had enough time to commit burglary.

*Thorgerson*, 172 Wn.2d at 448. Thus, Tadzhibayev fails to show the prosecutor's argument was

improper, and our analysis need go no further. We hold Tadzhibayev's prosecutorial misconduct

claim fails.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Tadzhibayev makes two ineffective assistance of counsel claims. First, she argues her counsel was ineffective for failing to object to the prosecutor's argument on rebuttal. Second, she argues her counsel was ineffective for failing to object under ER 702 (testimony by experts) to Officer Haigwood's testimony that, shortly after the alleged burglary and assault, Yelanskaya "was exhibiting signs of someone who had just had a significant release of adrenaline." Br. of Appellant at 18.

A. *Legal Principles*

A criminal defendant has a right to effective assistance of counsel at every critical stage of the proceeding under the Sixth Amendment and article I, section 22 of the Washington Constitution. *Bragg v. State*, 28 Wn. App. 2d 497, 503, 536 P.3d 1176 (2023).

To prevail on an ineffective assistance of counsel claim, a defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant's failure to show either prong will end our inquiry. *State v. Case*, 13 Wn. App. 2d 657, 673, 466 P.3d 799 (2020). Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). There is a strong presumption that defense counsel's performance was effective. *Id.* at 130. The defendant bears the burden of rebutting this presumption by showing there was no possible legitimate trial tactic that would justify defense counsel's performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

To demonstrate prejudice, the defendant must show a reasonable probability that, absent counsel's deficient performance, the trial's outcome would have been different. *Bertrand*,

3 Wn.3d at 129. A mere showing that the alleged errors had some conceivable effect on the outcome of the trial is insufficient. *Strickland*, 466 U.S. at 693. If an ineffective assistance of counsel claim fails to support a finding of either deficiency or resulting prejudice, it fails, and we do not need to address both prongs of the inquiry nor approach the inquiry in a particular order. *Strickland*, 466 U.S. at 697.

If the defendant's ineffective assistance of counsel claim is based on their attorney's failure to object, then they must show the objection would likely have been successful. *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021). "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *Id.* (quoting *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019)). However, defense counsel's failure to object to inadmissible evidence is deficient performance, and reversal is required if the defendant can show the result would likely have differed without the inadmissible evidence. *Id.* at 248-49.

B.      *Tadzhibayev's Ineffective Assistance of Counsel Claims Fail*

First, Tadzhibayev argues her counsel was ineffective for failing to object to the prosecutor's argument on rebuttal. In light of our decision that Tadzhibayev fails to show the prosecutor's argument was improper, we disagree. Where the prosecutor's argument was not improper, Tadzhibayev cannot show that defense counsel's performance fell below an objective standard of reasonableness nor that her counsel's objection would likely have been successful.

Next, Tadzhibayev argues her counsel was ineffective for failing to object under ER 702 to Officer Haigwood's testimony that, shortly after the alleged burglary and assault, Yelanskaya

"was exhibiting signs of someone who had just had a significant release of adrenaline." Br. of Appellant at 18. We disagree.

ER 702 states that a qualified expert witness may offer opinion testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Generally, expert testimony is admissible under ER 702 if the witness qualifies as an expert and their testimony would be helpful to the trier of fact. *State v. Lewis*, 141 Wn. App. 367, 389, 166 P.3d 786 (2007). A witness who does not testify as an expert may offer opinion testimony if their opinions or inferences are: rationally based on their perceptions, helpful to the trier of fact in understanding the witness's testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge covered by ER 702. See ER 701 (opinion testimony by lay witnesses); *State v. Henson*, 11 Wn. App. 2d 97, 102, 451 P.3d 1127 (2019). Lay testimony must be based on "'knowledge . . . from which a reasonable lay person could rationally infer the subject matter of the offered opinion.'" *City of Seattle v. Levesque*, 12 Wn. App. 2d 687, 704, 460 P.3d 205 (2020) (quoting *State v. Kunze*, 97 Wn. App. 832, 850, 988 P.2d 977 (1999)).

Tadzhibayev contends that Officer Haigwood could not testify without proper foundation that Yelanskaya was exhibiting signs of someone who experienced a significant release of adrenaline because such testimony is the subject of expert opinion under ER 702. We disagree. Here, Officer Haigwood did not testify as an expert witness. At trial, he described Yelanskaya as seeming "upset," "overwhelmed," and "shaken." RP at 750. He also testified that, "[Yelanskaya] was exhibiting signs of someone who had just had a *significant release of*

10

*adrenaline*. She—her hands were shaking. When she was talking to me, she was talking very rapidly but her voice, like, was trembling as she said it." RP at 750 (emphasis added).

Officer Haigwood offered his opinion that Yelanskaya was exhibiting signs consistent with a release of adrenaline, and this was based on his rationally based perceptions of Yelanskaya's behavior (i.e., shaking hands, talking quickly with a trembling voice). In other words, a reasonable lay person could rationally infer from Officer Haigwood's personal observations of Yelanskaya's behavior that she was experiencing a release of adrenaline. *See Levesque*, 12 Wn. App. 2d at 704; *see also* ER 701. His opinion was not based on scientific, technical, or other specialized knowledge within the scope of ER 702 nor did it require such knowledge. Thus, Officer Haigwood's testimony was proper lay opinion testimony under ER 701, and Tadzhibayev cannot show her attorney's objection would likely have been successful. We hold Tadzhibayev's ineffective assistance of counsel claims fail.

### III. LEGAL FINANCIAL OBLIGATIONS

Tadzhibayev argues the VPA and DNA collection fee should be stricken. The State concedes the LFOs should be stricken. We accept the State's concession.

Amended RCW 7.68.035(4) requires the trial court to not impose a VPA if the court finds at the time of sentencing that the defendant is indigent as defined in RCW 10.01.160(3). Amended RCW 7.68.035(4) applies to Tadzhibayev because this case is on direct appeal. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). At sentencing, the trial court found that Tadzhibayev was indigent because she receives public assistance and an annual income, after taxes, of 125 percent or less of the current federal poverty level. RCW 10.101.010(3)(a)-(c). Because the trial court made the specific indigency finding that is necessary under

11

No. 57972-3-II

RCW 10.01.160(3) and this case is on direct appeal, we reverse the VPA and remand to the trial court to strike the VPA.

Under former RCW 43.43.7541(1), the trial court must impose a DNA collection fee unless the State has already collected the offender's DNA as the result of a prior conviction. But the legislature has eliminated this provision. LAWS OF 2023, ch. 449, § 4; *see also Ellis*, 27 Wn. App. 2d at 17 (determining that the DNA collection fee is no longer mandatory). Thus, we reverse the DNA collection fee and remand to the trial court to strike the DNA collection fee.

CONCLUSION

We affirm the conviction but reverse the challenged LFOs and remand to the trial court to strike the VPA and DNA collection fee from Tadzhibayev's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Lee, P.J.

Glasgow, J.

12