# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  54258-7-II |
| Respondent, | |
| v. | |
| SAMMY BURRIS WEAVER, | |
| Appellant | |
| In the Matter of the Personal Restraint of: | Consolidated with No.  55021-1-II |
| SAMMY BURRIS WEAVER, | |
| Petitioner. | UNPUBLISHED OPINION |

Lee, C.J. — Sammy B. Weaver appeals his conviction and sentence for first degree burglary.  Weaver argues that (1) the State failed to present sufficient evidence of unlawful entry, unlawfully remaining, and intent to commit misdemeanor harassment to support the first degree burglary conviction, (2) the trial court erred in its "to-convict" jury instruction, and (3) his offender score was improperly calculated because the State failed to meet its burden of proving his prior convictions.  In a statement of additional grounds (SAG), Weaver argues that the trial court erred in denying his motion in limine, he received ineffective assistance of counsel, certain evidence was erroneously admitted, and the State used perjured testimony.  Weaver also filed a personal restraint petition (PRP), arguing that the trial court disregarded the rules of evidence by admitting the knife and alleged gun and that he was denied his right to cross-examine a witness.

We hold that Weaver's sufficiency of the evidence argument fails because the State presented sufficient evidence of unlawful entry, unlawfully remaining, and Weaver's intent to commit misdemeanor harassment. We decline to address Weaver's instructional error argument because he waived any challenge to the trial court's jury instructions on appeal. As to Weaver's offender score, the State concedes that Weaver's offender score was improperly calculated because it failed to meet its burden to prove Weaver's prior convictions. We also hold that Weaver's SAG claims regarding the motion in limine, ineffective assistance of counsel based on counsel's not examining a witness about his history with Weaver, and false testimony fail. We decline to address Weaver's SAG claim regarding ineffective assistance of counsel based on a failure to gather video evidence from the store and authentication. Further, we hold that Weaver's PRP claims fail.

Accordingly, we affirm Weaver's conviction for first degree burglary, but reverse Weaver's sentence and remand to the trial court for resentencing. We also deny Weaver's PRP.

FACTS

A.    CHARGING INFORMATION

The State charged Weaver with first degree burglary and felony harassment for an incident at an auto parts store in Belfair, Washington. In support of the first degree burglary charge, the State alleged that Weaver entered or remained unlawfully in the auto parts store with the intent to commit a crime "therein" on August 6, 2019.

B.    TRIAL TESTIMONY AND MOTIONS

Prior to trial, Weaver moved to exclude any testimony regarding Sergeant Kelly La France's concerns for safety about Weaver. Weaver anticipated that Sergeant La France would testify about safety concerns because her report included prior incidences with Weaver and

Weaver's known hostility to law enforcement. The trial court denied Weaver's motion to exclude. Sergeant La France did not testify at trial about any safety concerns due to prior incidences involving Weaver or about Weaver's known hostility to law enforcement.

Testimony at trial established that Weaver was banned from entering the auto parts store. Christopher Schamerhorn, a store employee, testified that on July 24, 2019, he told Weaver, "[Y]ou are trespassing; you are not welcome here, please leave." 1 Verbatim Report of Proceedings (VRP) (Oct. 2, 2019) at 109. Nathan Datus, another store employee, testified that "[Weaver] was told multiple times by our manager, as well as other employees" that he was banned from the store. 1 VRP (Oct. 2, 2019) at 139. Brian Kaufman, also a store employee, testified that he had to "escort[] [Weaver] out the door with my hands after [Weaver] was asked to leave thirty times." 2 VRP (Oct. 3, 2019) at 186. And Brendan Farlow, the store manager, directed his employees to call the police the next time Weaver entered the store.

On August 6, 2019, Weaver entered the store to complain about a transaction between store employees and a woman he had met that same day. Weaver entered the store with a knife on his hip. Weaver went to the counter and confronted Schamerhorn about the transaction. Datus witnessed the incident from about 12 to 14 feet away. Datus testified that Weaver pulled the knife from its sheath as the conversation with Schamerhorn got heated. Weaver held the knife with its blade pointed up, but under the counter where Schamerhorn could not see it. Other employees and customers were present inside the store during the incident.

As conversation escalated, Schamerhorn called Farlow and gave the phone to Weaver. Farlow spoke to Weaver on the phone and invited Weaver to return the next day to discuss the complaint in person. Farlow hoped that the call would placate Weaver and prevent the

confrontation from further escalating. The phone call lasted less than a minute, and Weaver promptly left the store.

After Weaver left the store, Datus told Schamerhorn that Weaver held a knife under the counter. Schamerhorn testified that he did not know about the knife until Weaver left the store. When he learned about the knife, Schamerhorn became fearful of Weaver.

Datus had called 911 the moment Weaver arrived at the store. While Datus was on the phone with the 911 operator, Weaver pointed what looked like a gun at Datus. Datus believed that the gun was real and threw himself to the ground. Sergeant La France responded to the incident and arrested Weaver. Datus remained on the phone with the 911 operator until Sergeant La France took Weaver into custody.

Weaver called Michael Christen to testify at trial. Christen testified that he had worked at the store for about three months and was working on the day of the incident that led to Weaver's arrest. On cross-examination, Christen testified that Weaver made him nervous because he saw a knife on Weaver and because he knew Weaver for "a lot of years." 2 VRP (Oct. 3, 2019) at 199. Defense counsel objected to Christen's testimony, but the trial court overruled the objection. Defense counsel did not follow up on Christen's past history with Weaver.

The State moved to admit Weaver's knife into evidence. Datus testified that the knife he was shown in court was the same knife that Weaver held on the day of the incident. The knife was admitted into evidence without objection.

The State also moved to admit the alleged gun, which was a makeshift piece of metal resembling a pistol, into evidence. The trial court admitted the alleged gun, marked as exhibit two, without objection. Datus testified that he believed exhibit two resembled a gun when pointed.

Datus also testified that it was the same object that Weaver pointed at him on the day of the incident.

C.      JURY INSTRUCTIONS AND CLOSING ARGUMENTS

The trial court instructed the jury on first degree burglary. The "to convict" instruction for first degree burglary provided that

> To convict the defendant of the crime of burglary in the first degree as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 6th day of August, 2019, the defendant entered or remained unlawfully in a building;
>
> (2) That the entering or remaining was with intent to commit a crime against a person or property therein;
>
> (3) That in so entering or while in the building or in immediate flight from the building the defendant was armed with a deadly weapon; and
>
> (4) That any of these acts occurred in the State of Washington.

Clerk's Papers (CP) at 35. Weaver did not object to this instruction at trial.

During closing argument, the State argued that Weaver unlawfully entered the auto parts store on August 6, 2019, and unlawfully remained in the store. The State also argued that Weaver intended to commit misdemeanor harassment "therein" when Weaver held the knife under the counter while confronting Schamerhorn. Weaver argued that the State presented insufficient evidence of both unlawful entry and unlawful remaining. Weaver also argued that he did not intend to commit misdemeanor harassment "therein." The jury found Weaver guilty of first degree burglary.

D.      SENTENCING

At sentencing, the State alleged that Weaver had two prior convictions.  Specifically, the State alleged that Weaver had one conviction for residential burglary in January 1999 and another for unlawful possession of a controlled substance in January 2014.  The State relied on these alleged convictions to argue that Weaver had an offender score of four on the burglary charge and asserted that "Mr. Weaver has a substantial amount of misdemeanor criminal history that prevents any of these felonies from washing out."  2 VRP (Oct. 21, 2019) at 311.

Defense counsel did not object to the State's allegations of Weaver's prior convictions. Furthermore, there is no evidence in the record that substantiates Weaver's criminal history.  The court sentenced Weaver to 45 months confinement.

Weaver appeals.

## ANALYSIS

A.      SUFFICIENCY OF THE EVIDENCE

Weaver argues that insufficient evidence supports the jury's verdict for first degree burglary.  We disagree.

### 1.      Legal Principles

Under both the federal and state constitutions, due process requires that the State prove every element of a crime beyond a reasonable doubt.  *State v. Hummel*, 196 Wn. App. 329, 352, 383 P.3d 592 (2016).  Thus, "sufficiency of the evidence is a question of constitutional law that we review de novo."  *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

To determine whether the State has produced sufficient evidence to support the charged crime, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. Credibility determinations are made by the trier of fact and are not subject to review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Id.*

The first degree burglary statute provides that

> [a] person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon.

RCW 9A.52.020(1)(a). Thus, first degree burglary requires that the defendant enter or remain "unlawfully" in a "building." RCW 9A.52.020(1). "A person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(2).

To prove misdemeanor harassment, the State must prove that the defendant knowingly threatened to cause bodily injury immediately, or in the future, to the person threatened or to any other person. RCW 9A.46.020(1)(a)(i). The State must also prove that the person, by words or conduct, places the person threatened in reasonable fear that the threat will be carried out. RCW 9A.46.020(1)(b). The term "threaten," as used in RCW 9A.46.020, may include nonverbal utterances or gestures. *State v. Pinkney*, 2 Wn. App. 2d 574, 581, 411 P.3d 406 (2018). "[A]

classic example of a legitimate implied threat is brandishing a weapon." *State v. Shcherenkov*, 146 Wn. App. 619, 626, 191 P.3d 99 (2008), *review denied*, 165 Wn.2d 1037 (2009).

2.      Unlawful Entry

Weaver argues that the State presented insufficient evidence of unlawful entry because he did not have notice that the auto parts store had banned him. We disagree.

"A private property owner may restrict the use of its property to those purposes for which it is lawfully dedicated so long as the restrictions are not discriminatory." *State v. Kutch,* 90 Wn. App. 244, 247, 951 P.2d 1139 (1998). A person's presence may be unlawful because of a revocation of the privilege to be there. *State v. Collins,* 110 Wn.2d 253, 258, 751 P.2d 837 (1988). The defendant must be sufficiently notified that he is no longer invited into the premises as a member of the general public. *See Kutch,* 90 Wn. App. at 247-48.

Here, Weaver contends that testimony showed that the "store employees enforced the 'trespass' against [him] in an ad hoc fashion, sometimes telling him to leave and sometimes treating him like any other welcome customer." Br. of Appellant at 15. Thus, Weaver argues that a reasonable person would not know when they would have license to enter the premises.

Contrary to Weaver's contention, the record shows that Weaver was repeatedly told not to return to the store. On July 24, 2019, Schamerhorn told Weaver that he "[was] not welcome" at the auto parts store and that he was trespassing. 1 VRP (Oct. 2, 2019) at 109. Kaufman testified that, during the week of July 22, 2019, he physically escorted Weaver from the premises after Weaver was told to not return. And Datus testified that that Weaver "was told multiple times by our manager, as well as other employees" that he was banned from entering the store. 1 VRP (Oct. 2, 2019) at 139.

Because the record shows that store employees had repeatedly told Weaver that he was not welcome at the store, a rational trier of fact could find that Weaver had sufficient notice that his entering the store was an unlawful entry. And because Weaver entered the store despite being told not to return, a rational trier of fact could find beyond a reasonable doubt that he unlawfully entered the store on August 6, 2019. *See Collins*, 110 Wn.2d at 258. Accordingly, sufficient evidence supports Weaver's unlawful entry into the store. *See Homan*, 181 Wn.2d at 105.

3.      Unlawful Remaining

Weaver argues that the State presented insufficient evidence of his unlawfully remaining in the store. We disagree.

When a defendant has entered unlawfully, he ordinarily "'cannot be said to have any license or privilege to be in the building at all. Consequently, the defendant's continuing presence in the building satisfies the statutory definition of unlawful remaining.'" *State v. Cordero*, 170 Wn. App. 351, 366, 284 P.3d 773 (2012) (quoting *State v. Allen,* 127 Wn. App. 125, 133, 110 P.3d 849 (2005)). "The criminal code does not establish a minimum duration for a burglary." *Id.* at 367.

Here, Weaver unlawfully entered the store on August 6, 2019. Because Weaver unlawfully entered the store, his continuing presence in the store also satisfies the statutory definition of unlawful remaining. *See id*.

Weaver relies on *State v. Cordero* for the proposition that "[e]ven where a person's initial entry into a building is unlawful, he does not 'remain' unlawfully if he is thereafter detained by someone with authority over the premises." Br. of Appellant at 16. In *Cordero*, the victim's mother physically placed herself in front of a doorway in an effort to detain the defendant.

*Cordero*, 170 Wn. App. at 366-67. There, the court held that "[i]f Ms. Garcia prevented Mr. Cordero from leaving the motel room *on any terms*, that period of his detention should not count as unlawful remaining for purposes of the first element of first degree burglary." *Id.* at 366 (emphasis added).

Weaver's reliance on *Cordero* is unpersuasive because *Cordero* is factually distinguishable from this case. Here, when Weaver confronted Schamerhorn about a customer complaint, Schamerhorn called his manager, Farlow, and gave the phone to Weaver. Farlow spoke to Weaver on the phone. The phone call lasted less than a minute, and Weaver promptly left the store. Unlike *Cordero*, the record fails to establish that store employees physically placed themselves in front of the doorway in an effort to detain Weaver. 170 Wn. App. at 366-67. Also, nothing in the record establishes that store employees prevented Weaver from leaving "on any terms." *Id.* at 366. Because the evidence in the record fails to establish that store employees tried to physically detain Weaver, and because no evidence in the record establishes that store employees tried to prevent Weaver from leaving on any terms, Weaver's argument relying on *Cordero* fails.

Weaver also argues that "[t]he ruse to keep [him] in the store on August 6, 2019 . . . functioned as an invitation and negated the 'unlawful remaining' element of burglary." Reply Br. of Appellant at 6. We disagree.

Here, although Farlow spoke to Weaver on the phone and invited him to return to the store the next day, Farlow did not invite Weaver to stay in the store on August 6, 2019. Viewing the evidence in the light most favorable to the State, Farlow did not give Weaver a license to remain in the store on August 6, 2019.

Because the evidence showed that Weaver was not licensed to remain in the store on the day of the incident, a rational juror could conclude beyond a reasonable doubt that Weaver unlawfully remained. *See Cordero*, 170 Wn. App. at 366. Accordingly, the State presented sufficient evidence of unlawfully remaining. *See Homan*, 181 Wn.2d at 105.

4. Intent To Commit A Crime Therein

Weaver argues that "there was insufficient evidence that [he] intended to commit the crime of misdemeanor harassment at all." Br. of Appellant at 19. Specifically, Weaver relies on *State v. J.M.*, 144 Wn.2d 472, 28 P.3d 720 (2001), to support his argument that he did not knowingly communicate a threat. We disagree.

In *State v. J.M.*, our Supreme Court held that a defendant must be aware that he is communicating a threat under our harassment statute. 144 Wn.2d at 481. "Therefore, the individual who writes a threat in a personal diary, or who mutters a threat without awareness that it is heard, or who loudly makes a threat when he or she thinks no one else is around, does not 'knowingly threaten.'" *Id*.

Here, Datus testified that Weaver removed the knife from its sheath while having a heated conversation with Schamerhorn. Testimony also established that employees and customers were in the store at the time of the incident. Because brandishing a knife in a store open to the general public is not the same as writing a threat in a personal diary, and because Weaver could not reasonably think that other people were not in the store during the incident, Weaver's reliance on *J.M.* fails. *See J.M.*, 144 Wn.2d at 481.

Displaying a weapon during a heated confrontation can be interpreted as communicating a threat. *See Shcherenkov*, 146 Wn. App. at 626. Thus, a rational juror could conclude beyond a

11

reasonable doubt that Weaver intended to commit misdemeanor harassment. *See* RCW 9A.46.020(1)(a)(i). Accordingly, the State presented sufficient evidence to prove that Weaver intended to commit misdemeanor harassment. *See Homan*, 181 Wn.2d at 105.

Weaver also argues that "there was insufficient evidence that [he] intended to commit the crime of misdemeanor harassment inside the burglarized premises." Br. of Appellant at 19. Specifically, Weaver argues that, because Schamerhorn did not perceive the threat until he had left the store, he did not accomplish the crime of misdemeanor harassment "therein." We disagree.

The first degree burglary statute provides that

> [a] person is guilty of burglary in the first degree if, *with intent to commit a crime against a person or property therein*, he or she enters or remains unlawfully in a building and if, in entering or while in the building . . . the actor or another participant in the crime . . . is armed with a deadly weapon.

RCW 9A.52.020(1) (emphasis added). The statute does not require the State to prove that a defendant actually completed the predicate offense; rather, it only requires an intent to commit a crime inside the burglarized premises. *State v. Kilponen*, 47 Wn. App. 912, 916, 737 P.2d 1024, *review denied*, 109 Wn.2d 1019 (1987).

Here, Weaver entered the store while wearing a knife on his hip. Weaver confronted Schamerhorn to complain about a transaction between the store and a woman he met that day. When conversation became heated, Weaver pulled the knife from its sheath and held the knife with the blade pointed up.[1] The burglary statute only requires an intent to commit the predicate offense, and here, the threat itself occurred inside the store. *Kilponen*, 47 Wn. App. at 916. Thus, a rational

---

[1] Although Schamerhorn did not perceive this threat until Weaver left the store, he did become fearful when he learned about the knife.

juror could conclude beyond a reasonable doubt that Weaver intended to commit misdemeanor harassment inside the store. *See* RCW 9A.46.020(1)(a)(i); *Shcherenkov*, 146 Wn. App. at 625. Therefore, the State presented sufficient evidence of Weaver's intent to commit misdemeanor harassment "therein." *See Homan*, 181 Wn.2d at 105.

Because the evidence could lead a rational juror to conclude beyond a reasonable doubt that Weaver unlawfully entered and remained in the store, and because the evidence could lead a rational juror to conclude beyond a reasonable doubt that Weaver intended to commit misdemeanor harassment inside the store, the State presented sufficient evidence of first degree burglary. *See* RCW 9A.52.020(1); *Homan*, 181 Wn.2d at 105. Accordingly, we affirm Weaver's conviction for first degree burglary.

B.    INSTRUCTIONAL ERROR

Weaver argues that the trial court improperly instructed the jury on unlawful remaining because there is insufficient evidence that he remained unlawfully in the auto parts store. We decline to reach this issue.

Challenges to jury instructions are reviewed de novo. *State v. Pirtle,* 127 Wn.2d 628, 656, 904 P.2d 245 (1995), *cert. denied,* 518 U.S. 1026 (1996). Generally, a defendant who does not object to an instruction in the trial court cannot challenge that instruction for the first time on appeal. RAP 2.5(a); *see State v. O'Hara*, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009). One exception to RAP 2.5(a) is when the claimed error is a "manifest error affecting a constitutional right." RAP 2.5(a)(3).

To meet RAP 2.5(a)(3) and raise an error for the first time on appeal, an appellant must demonstrate (1) the error is truly of constitutional dimension and (2) the error is manifest. *State v.*

*Grott*, 195 Wn.2d 256, 267, 458 P.3d 750 (2020). Jury instructional errors that have been held as manifest constitutional errors include "'directing a verdict, shifting the burden of proof to the defendant, failing to define the beyond a reasonable doubt standard, failing to require a unanimous verdict, and omitting an element of the crime charged.'" *Id.* at 268 (internal quotation marks omitted) (quoting *O'Hara*, 167 Wn.2d at 100-01).

Here, Weaver raises an instructional error for the first time on appeal. Because Weaver failed to object to the "to-convict" instructions at trial, he must show that the alleged instructional error is a manifest error of constitutional magnitude in order to obtain appellate review. RAP 2.5(a)(3). But Weaver fails to address RAP 2.5(a)(3) in his opening brief. Appellants are deemed to waive an assignment of error when they present no argument in their opening brief. *Cowiche Canyon Conservancy v. Bosley,* 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Because Weaver failed to object at the trial court, and because Weaver fails to address RAP 2.5(a)(3) in his opening brief, he has waived his challenge to the trial court's "to-convict" instruction for first degree burglary. *See* RAP 2.5(a); *Cowiche Canyon*, 118 Wn.2d at 809. Accordingly, we decline to reach the merits of this issue.[2]

---

[2] Even if we accept Weaver's argument that the instructional error deprived him of a right to a unanimous jury verdict, Weaver's instructional error argument would fail. Recently, we held that residential burglary is not an alternative means offense because unlawful entering and remaining are merely "'nuances inhering in the same [prohibited] act' and 'facets of the same criminal conduct.'" *State v. Smith*, 17 Wn. App. 2d 146, 156, 484 P.3d 550 (internal quotation marks omitted) (quoting *State v. Barboza-Cortes*, 194 Wn.2d 639, 643, 451 P.3d 707 (2019)), *review denied*, 198 Wn.2d 1005 (2021). Because the residential burglary and first degree burglary statutes both use the phrase "enters or remains unlawfully," it follows that the holding of *Smith* applies to the first degree burglary statute. *Compare* RCW 9A.52.025(1) *with* RCW 9A.52.020(1). Thus, because burglary is not an alternative means crime, jury unanimity on both unlawfully enters or unlawfully remains is not required. *Smith*, 17 Wn. App. 2d at 151. Accordingly, an argument that jury unanimity was required because burglary is an alternative means crime fails.

C.    SENTENCING ERROR

Weaver argues that the trial court improperly calculated his offender score because the State failed to meet its burden of proving Weaver's prior convictions at sentencing. The State concedes the error. We accept the State's concession, reverse Weaver's sentence, and remand to the trial court for resentencing.

We review a trial court's calculation of an offender score de novo. *State v. Bergstrom,* 162 Wn.2d 87, 92, 169 P.3d 816 (2007). "[I]llegal or erroneous sentences may be challenged for the first time on appeal." *State v. Ford,* 137 Wn.2d 472, 477, 973 P.2d 452 (1999). To establish a defendant's criminal history for sentencing purposes, the State must prove a defendant's prior convictions by a preponderance of the evidence. RCW 9.94A.500(1); *State v. Hunley,* 175 Wn.2d 901, 909–10, 287 P.3d 584 (2012). "While the preponderance of the evidence standard is 'not overly difficult to meet,' the State must at least introduce 'evidence of some kind to support the alleged criminal history.'" *Hunley,* 175 Wn.2d at 910 (quoting *Ford,* 137 Wn.2d at 480)). And this evidence must bear "'some minimal indicium of reliability.'" *Ford,* 137 Wn.2d at 481 (quoting *United States v. Ibarra*, 737 F.2d 825, 827 (9th Cir. 1984)).

The best evidence of a prior conviction is a certified copy of the judgment, but the State also may produce other comparable documents or transcripts from prior hearings to prove prior

---

But even if first degree burglary is an alternative means crime, the record contains sufficient evidence of both entering unlawfully and remaining unlawfully to support the jury's verdict. *See State v. Sandholm*, 184 Wn.2d 726, 732, 364 P.3d 87 (2015) (jury unanimity instruction not required when each alternative means presented to the jury is supported by sufficient evidence). Therefore, because the record contains sufficient evidence of both entering unlawfully and remaining unlawfully, a jury unanimity challenge to the trial court's jury instruction that included both entering unlawfully and remaining unlawfully fails. See *id.*

convictions. *Hunley,* 175 Wn.2d at 910. The State can also meet its burden if the defendant affirmatively acknowledges his criminal history on the record. *State v. Mendoza,* 165 Wn.2d 913, 929, 205 P.3d 113 (2009). But a defendant's "mere failure to object to State assertions of criminal history at sentencing does not result in an acknowledgement." *Hunley,* 175 Wn.2d at 912. And "[b]are assertions, unsupported by evidence, do not satisfy the State's burden to prove the existence of a prior conviction." *Id.* at 910.

A trial court violates a criminal defendant's due process rights when it bases a sentence on the prosecutor's bare assertions or allegations of prior convictions. *Hunley,* 175 Wn.2d at 915. If an offender score determination is based on insufficient evidence, the case will be remanded for resentencing and the State is permitted to introduce new evidence "if the State allege[d] the existence of prior convictions at sentencing and the defense fail[ed] to 'specifically object' before the imposition of the sentence." *Bergstrom,* 162 Wn.2d at 93 (quoting *State v. Lopez,* 147 Wn.2d 515, 520, 55 P.3d 609 (2002)).

Here, the State alleged that Weaver had two prior convictions, one for residential burglary in January 1999 and the other for unlawful possession of a controlled substance in January 2014. The State relied on these alleged convictions to argue that Weaver had an offender score of four on the burglary charge and asserted that "Mr. Weaver has a substantial amount of misdemeanor criminal history that prevents any of these felonies from washing out." 2 VRP (Oct, 21, 2019) at 311. Defense counsel did not object to this assertion. There is no evidence in the record that substantiates Weaver's criminal history.

Because bare assertions, unsupported by evidence, do not satisfy the State's burden to prove Weaver's prior convictions, the trial court erred in calculating Weaver's offender score. *See*

*Hunley,* 175 Wn.2d at 910.  Accordingly, we reverse Weaver's sentence and remand to the trial court for resentencing.  *See Bergstrom,* 162 Wn.2d at 93.  On remand, the State is permitted to introduce new evidence of Weaver's prior convictions.  *See id*.

SAG[3]

Weaver raises numerous issues in his SAG.  We hold that Weaver's claim regarding the motion in limine, ineffective assistance of counsel, and false testimony fail.  We decline to address Weaver's ineffective assistance of counsel and authentication claims.

A.     MOTION IN LIMINE

In his SAG, Weaver claims that the trial court erred in denying his motion in limine, which sought to exclude Sergeant La France's testimony regarding safety concerns about Weaver.  We disagree.

We review a trial court's rulings on motions in limine for abuse of discretion.  *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).  And we review a trial court's evidentiary rulings for an abuse of discretion.  *Id.*  A court abuses its discretion if it is exercised on untenable grounds or for untenable reasons.  *State v. Ruiz*, 176 Wn. App. 623, 634, 309 P.3d 700, *review denied*, 179 Wn.2d 1015 (2013), *cert. denied*, 574 U.S. 833 (2014).

Even if the trial court abuses its discretion in issuing an evidentiary ruling, we then ask "whether the trial court's evidentiary error was harmless, applying the nonconstitutional harmless error standard."  *State v. Case*, 13 Wn. App. 2d 657, 670, 466 P.3d 799 (2020).  The nonconstitutional harmless error test requires the defendant to "show a reasonable probability that,

---

[3] Weaver filed a motion on May 10, 2021, asking for oral argument on his SAG issues.  Motion, No. 54258-7-II, (May 10, 2021).  We deny this motion.

absent the error, the outcome of his trial would have been materially affected." *Id.* In other words, the error is not reversible unless the defendant shows that the evidentiary ruling resulted in prejudice. *See State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997) ("'error is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'" (quoting *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981))).

Here, Weaver asked the trial court to exclude testimony regarding law enforcement's concerns about safety on the date of Weaver's arrest. Defense counsel informed the court that Sergeant La France may testify about safety concerns because of prior incidences with Weaver and because of Weaver's known hostility to law enforcement. But even if the trial court abused its discretion in denying Weaver's motion in limine, Weaver's argument fails because he fails to demonstrate any prejudice. Weaver cannot demonstrate prejudice because Sergeant La France did not testify at trial about any safety concerns due to prior incidences or about Weaver's known hostility to law enforcement. Because such testimony was not presented at trial, there is no reasonable probability that the error materially affected the outcome of the trial. *Case*, 13 Wn. App. 2d at 670. Accordingly, Weaver's claim fails.

B.      INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the U.S. Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). An ineffective assistance of counsel claim is a mixed question of fact and law that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *Grier*, 171 Wn.2d at 32-33. If the defendant fails to satisfy either prong, the defendant's ineffective assistance of counsel claim fails. *Id.* at 33.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id*. We engage in a strong presumption that counsel's performance was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defendant may overcome this presumption by showing that "'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

To establish prejudice, the defendant must "prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862.

We will not consider matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Thus, "[i]f a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition, which may be filed concurrently with the direct appeal." *Id.*

First, Weaver claims that defense counsel was deficient because counsel should have further examined Christen about his history with Weaver. We disagree.

The extent of questioning is a matter of judgment and strategy. *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007). A decision to not question a witness is often tactical because counsel may be concerned about opening the door to damaging rebuttal or because further

examination may not provide evidence useful to the defense. *In re Pers. Restraint of Brown*, 143 Wn.2d 431, 451, 21 P.3d 687 (2001).

Here, Christen testified that he had worked at the auto parts store for about three months. During the State's cross-examination, Christen testified that Weaver made him nervous because he saw a knife on Weaver and because he knew Weaver for "a lot of years." 2 VRP (Oct. 3, 2019) at 199. Defense counsel objected to this statement, but the trial court overruled the objection. Defense counsel did not follow up on re-direct. Defense counsel's decision to not question Christen does not amount to deficient performance because counsel may not have wanted to emphasize Weaver's character before the jury. *See Brown*, 143 Wn.2d at 451. Therefore, Weaver fails to rebut the strong presumption that defense counsel's failure to question was reasonable because he cannot show that there is no conceivable legitimate tactic explaining counsel's performance. *See Grier*, 171 Wn.2d at 33; *Brown*, 143 Wn.2d at 451. Accordingly, Weaver's claim that defense counsel was deficient because counsel should have further examined Christen about his history with Weaver fails.

Second, Weaver claims that he was provided ineffective assistance because defense counsel failed to gather video evidence from the auto parts store. "A defendant can overcome the presumption of effective representation by demonstrating 'that counsel failed to conduct appropriate investigations.'" *State v. Estes*, 188 Wn.2d 450, 462-63, 395 P.3d 1045 (2017) (quoting *State v. Thomas*, 109 Wn.2d 222, 230, 743 P.2d 816 (1987)). But here, the record does not disclose the scope of defense counsel's pretrial investigation into obtaining video evidence from the store. Because our review is limited to the appellate record, we decline to consider the

issue of whether counsel was ineffective in failing to obtain video evidence. *McFarland*, 127 Wn.2d at 335.

C.    AUTHENTICATION

Weaver claims that Datus should have been required to describe the unique features of the knife and alleged gun before they were admitted into evidence. We decline to reach this issue.

Generally, an "appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a); *O'Hara*, 167 Wn.2d at 97-98. An exception to the general rule is when there is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011). To meet RAP 2.5(a)(3), "the appellant must 'identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.'" *O'Hara*, 167 Wn.2d at 98 (quoting *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007).

Here, Weaver did not object to the admission of the knife or gun at trial. The record does not demonstrate how admitting the knife and alleged gun that was identified by a witness testifying at trial affected Weaver's right to a fair trial. Because Weaver failed to object to the admission of the knife and alleged gun in the trial court, and because Weaver was not deprived of his right to a fair trial, we decline to reach the issue on appeal. *See* RAP 2.5(a); *O'Hara*, 167 Wn.2d at 97-98.

D.    FALSE TESTIMONY

Weaver claims that Datus knowingly presented false testimony. We disagree.

"[A] 'conviction obtained by the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *In re of Pers. Restraint of Benn,* 134 Wn.2d 868, 936–

37, 952 P.2d 116 (1998) (quoting *United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)). Here, Weaver has not shown, nor does the record support, that Datus lied or that the State knowingly presented false testimony. Further, Datus was subject to cross-examination and the jury was left to determine the credibility of his testimony. *See id.* at 936–38. Because Weaver fails to show that Datus knowingly offered false testimony, his claim fails.

PRP[4]

In his PRP, Weaver argues that the trial court disregarded the rules of evidence by admitting the knife and alleged gun and that he was denied his right to cross-examine a witness. We deny Weaver's PRP because he fails to make a prima facie showing of any constitutional or nonconstitutional error.

A.      LEGAL PRINCIPLES

A petitioner may request relief through a PRP when he or she is under an unlawful restraint. RAP 16.4(a)-(c). A personal restraint petitioner must prove either a (1) constitutional error that results in actual and substantial prejudice or (2) nonconstitutional error that constitutes a fundamental defect which inherently results in a complete miscarriage of justice. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004). The petitioner must prove the error by a preponderance of the evidence. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004). In addition, the petitioner must support the petition with facts or evidence and

---

[4]  Weaver filed a motion requesting permission to submit previously submitted reference materials "to aid in deciphering the chronological deficiencies in the trial transcript record." Motion, No. 55021-1-II, (Apr. 5, 2021) at 1. Weaver quotes at length from the trial transcript, arguing that the witness testimony is not credible. Issues concerning witness credibility are solely within the province of the jury and will not be disturbed on appeal. *State v. Johnson,* 2 Wn. App. 743, 744, 472 P.3d 411 (1970). Therefore, we deny Weaver's motion.

may not rely solely on conclusory allegations. RAP 16.7(a)(2)(i); *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813-14, 792 P.2d 506 (1990). Where the record does not provide any facts or evidence on which to decide the issue and the petition instead relies solely on conclusory allegations, we will decline to determine the validity of a PRP. *See In re Pers. Restraint of Williams,* 111 Wn.2d 353, 365, 759 P.2d 436 (1988).

In evaluating PRPs, we can deny the petition if the petitioner fails to make a prima facie showing of actual or substantial prejudice or a fundamental defect, remand for a reference hearing if the petitioner makes a prima facie showing but the record is insufficient to determine the merits of the contentions, or grant the PRP without further hearing if the petitioner has proved actual and substantial prejudice or a fundamental defect. *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015).

B.    ADMISSION OF KNIFE AND ALLEGED GUN

Weaver claims that the trial court erred in admitting the knife and the alleged gun without any testimony describing the unique features of each item. We disagree.

A court's admission of evidence is reviewed for abuse of discretion. *State v. Gunderson*, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). Abuse of discretion occurs when a trial court's decision is manifestly unreasonable or based on untenable grounds. *Id*.

Under ER 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "This requirement is met 'if sufficient proof is introduced to permit a reasonable trier of fact to find in favor of authentication or identification.'" *State v. Bradford,* 175 Wn. App. 912, 928, 308 P.3d 736 (2013) (quoting *State v. Danielson*, 37 Wn. App

469, 471, 681 P.2d 260 (1984)), *review denied*, 179 Wn.2d 1010 (2014). One method of authentication is by the testimony of a witness with personal knowledge. ER 901(b)(1). "The trial court is not bound by the rules of evidence when making a determination as to authenticity." *Bradford,* 175 Wn. App. at 928.

Here, the State produced sufficient evidence to support a finding that the knife and alleged gun were what the State purported them to be. *See* ER 901(b)(1). Datus testified that he witnessed Weaver pull out a knife while having a heated discussion with Schamerhorn. Datus testified that the knife he was shown in court was the same knife that Weaver held on the day of the incident. Datus also testified that Weaver pointed what looked like a gun at him on the day of the incident. Datus testified that he believed exhibit two resembled a gun. Datus further testified that exhibit two was the same object that Weaver pointed at him on the day of the incident.

Given the testimony at trial, the State properly authenticated the knife and alleged gun under ER 901(a) and (b), and the trial court did not abuse its discretion in admitting the knife and alleged gun. Therefore, Weaver fails to show any error that constitutes a fundamental defect that results in a complete miscarriage of justice. *See Davis*, 152 Wn.2d at 671-72.

C.      RIGHT TO CROSS-EXAMINE WITNESS

Weaver claims that he was denied his right to cross-examine Datus. We disagree.

Here, Weaver makes a factually unsupported claim that he was denied the opportunity to cross-examine Datus about an alleged pretrial statement regarding his location and proximity to the crime. Weaver only states that "[p]rior to trial[,] [Datus] described his location differently than the location submitted at trial." PRP at 4. Weaver presents no other argument to support his claim of error. Because the record does not provide any facts or evidence on which to decide the issue,

and because the petition instead relies solely on conclusory allegations, Weaver fails to show any constitutional error that resulted in actual or substantial prejudice. *See Williams*, 111 Wn.2d at 365.

Weaver fails to show any error that constitutes a fundamental defect that results in a complete miscarriage of justice. Accordingly, we deny Weaver's PRP.

CONCLUSION

We affirm Weaver's conviction for first degree burglary, but reverse Weaver's sentence and remand to the trial court for resentencing. We deny Weaver's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.P.T.